UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

v.

KEVIN TOTH,

        Defendant.

---

1:20-CR-00177-JLS-MJR

REPORT, RECOMMENDATION AND ORDER

This case was referred by the presiding judge, the Honorable John L. Sinatra, Jr., to this Court, pursuant to 28 U.S.C. §636(b)(1), to handle non-dispositive discovery motions and to make a recommendation as to all suppression motions.

Before the Court are omnibus motions by defendant Kevin Toth ("defendant"), including motions to suppress evidence and various discovery demands. (Dkt. No. 87). For the following reasons, it is recommended that defendant's motions to suppress be denied. The Court's decisions as to defendant's and the Government's various discovery demands are also set forth in detail below.

## BACKGROUND AND PROCEDURAL HISTORY

On November 12, 2020, a grand jury returned an Indictment charging defendant Kevin Toth, along with co-defendant Samantha Yeates,[1] with obstruction of justice, in violation of Sections 1512(c)(1) and 2 of Title 18 of the United States Code. (Dkt. No. 27). The allegations relate to defendant's obstruction of a federal grand jury investigation of

---

[1] Co-defendant Yeates was additionally charged with two counts of making a false statement in violation of Section 1001(a)(2) of Title 18 of the United States Code. (Dkt. No. 27). Yeates has not filed any pretrial motions.

the fatal drug overdose of M.A., a person known to the grand jury, on December 28, 2018 in the City of Tonawanda, New York. (*Id.*).

Defendant has filed omnibus motions seeking, *inter alia*, suppression of evidence seized pursuant to a search warrant and suppression of statements. (Dkt. No. 87). The Government filed a response to defendant's motions and made a cross-motion for reciprocal discovery. (Dkt. No. 97). Defendant did not reply.

Oral argument on the motions was scheduled for June 28, 2022. On June 27, 2022, the Court issued a text order advising that defendant's motions would be reviewed on the papers without oral argument. (Dkt. No. 98). The Court considered the matter submitted for decision and report and recommendation at that time.

## DISCUSSION

### *Motion to Suppress Evidence*

Defendant moves to suppress evidence gained pursuant to a search warrant issued for his Facebook account.[2] (Dkt. No. 87, ¶¶ 12-32). Defendant challenges the issuance of this search warrant on the grounds that warrant application failed to establish probable cause and that the warrant is overbroad. (*Id.*).

The Fourth Amendment provides for: "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "The chief evil that prompted the framing and

---

[2] Defendant submitted an affidavit alleging that he is the subscriber and customer of the Facebook account (User ID: 100013475833053) that was the subject of the warrant. (Dkt. No. 87, pg. 35). The Court concludes that defendant has standing to challenge this search.

2

adoption of the Fourth Amendment was the 'indiscriminate searches and seizures' conducted by the British 'under the authority of general warrants.'" *United States v. Galpin*, 720 F.3d 436, 445 (2d Cir. 2013) (quoting *Payton v. New York*, 445 U.S. 573, 583 (1980); *Arizona v. Gant*, 556 U.S. 332, 345 (2009)). The Fourth Amendment guards against this practice by requiring that a warrant will issue only if: (1) the Government establishes probable cause to believe the search will uncover evidence of a specific crime; and (2) the warrant states with particularity the areas to be searched and the items to be seized. *United States v. Ganias*, 755 F.3d 125, 134 (2d Cir. 2014).

Upon a challenge to a probable cause finding made in a search warrant, a reviewing court must give deference to the issuing judge. *Illinois v. Gates*, 462 U.S. 213, 236 (1969). The court is not to conduct a *de novo* review nor is it to "interpret[] affidavit[s] in a hypertechnical, rather than a commonsense, manner." *Id*. Instead, the role of a reviewing court "is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." *Id*. at 238 (internal citations omitted). The probable cause analysis is based on the totality-of-the-circumstances, with the task of the issuing magistrate to "simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him [...] there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id*. Where, as here, the Court is reviewing the probable cause determination of an independent magistrate, it asks solely "whether the issuing judicial officer had a substantial basis for the finding of probable cause." *United States v. Wagner*, 989 F.2d 69, 72 (2d Cir. 1993). Doubts regarding the existence of probable cause should be resolved in favor of upholding the search warrant. *United States v. Travisano*, 724 F.2d 341, 345 (2d Cir. 1983). To that

end, warrant affidavits are entitled to "a presumption of validity." *Franks v. Delaware*, 438 U.S. 154, 171 (1978).

Applying this standard of review, the Court has reviewed the search warrant, along with the unredacted warrant application, and finds that probable cause existed for its issuance. On February 13, 2019, the undersigned issued a warrant to search information associated with the Facebook accounts of defendant Toth and co-defendant Yeates during the time period of December 26, 2018 to February 6, 2019. *See* 1:19-mj-05034-MJR. The warrant was supported by the application and affidavit of Drug Enforcement Administration ("DEA") Task Force Officer David Ljiljanich. Officer Ljiljanich's affidavit laid out the following information to demonstrate probable cause for the search: (1) discussion of his investigation into the overdose death of M.A. that occurred in a bathroom at Snyder Industries on December 29, 2018; (2) discussion of security footage from that date showing defendant Toth at Snyder Industries engaging in a "heated discussion" with M.A.; (3) discussion of security footage showing Toth leaving his work space area to meet co-defendant Yeates in a red Ford pick-up truck in the parking lot of the building; (4) discussion of security video footage showing defendant Toth then providing an item to M.A. and M.A. walking towards the bathroom where he was found unresponsive shortly thereafter; (5) discussion of police recovering narcotics paraphernalia located near M.A.'s body including a metal spoon with residue which later tested positive for the presence of fentanyl; (6) discussion of defendants Toth and Yeates communicating via cellular telephone between January 1, 2019 and February 6, 2019; and (6) discussion of the public Facebook profile pages of defendants Toth and Yeates, as well as discussion of Facebook's capabilities, including messaging logs and other stored communication data.

The warrant application also includes discussion of additional information supporting probable cause which has been redacted from the copy of the affidavit provided to the defense due to the protected nature of the content contained therein. Although the Court will not restate those additional allegations herein, it has reviewed the entire warrant application and has considered them in its analysis. Based upon these facts, Officer Ljiljanich submitted that evidence of violations of Title 21, United States Code, Section 846 (attempt or conspiracy to distribute controlled substances) would be found in defendant's Facebook account.

Defendant argues that the allegations of the affidavit merely reflect communications between Toth and Yeates which are consistent with conversations between two people who are involved in a relationship, as Toth and Yeates allegedly were. Although defendant's position is unclear, it can be accurately characterized as a challenge to probable cause, not an overbreadth argument.

Contrary to defendant's arguments, there was sufficient probable cause to believe that evidence of the suspected offenses of attempt or conspiracy to distribute narcotics would be found within his Facebook account. The warrant application clearly establishes defendant's suspected involvement in the overdose death of M.A., including the timing and sequence of contact between Toth, Yeates, and M.A. on the date of his death. The affidavit gives ample cause to believe that Yeates provided narcotics to Toth, who, in turn, provided narcotics to M.A. Based on this evidence, it is also reasonable to find that Toth's frequent communications with Yeates immediately following M.A.'s death were part of a criminal conspiracy, regardless of the exact nature of the relationship between the two defendants. Moreover, the unredacted affidavit includes facts indicating that some of

those communications were made via Facebook. Thus, the warrant issued for defendant's Facebook account established probable cause that the account contained evidence of a crime.[3]

Defendant requests a *Franks* hearing on the grounds that Officer Ljiljanich's affidavit misled the Court by not informing the Court that defendants Toth and Yeates were involved in a relationship. He believes that "knowledge of this fact illuminates the nature of the probable cause factors set forth in the search warrant application in a light different than that which is rayed [sic] in the affidavit, where it appears on its face that the co-defendants are practically unknown to each other and have only come together for the limited purpose of attempting to obscure evidence that may be relevant in the investigation of the overdose death of M.A." (Dkt. No. 87, ¶ 29).

---

[3] To the extent defendant is arguing that the warrant's directive to search his entire Facebook account was constitutionally overbroad or lacking particularity, the Court disagrees. A warrant is overbroad where its description of the objects to be seized "is broader than can be justified by the probable cause upon which the warrant is based." *Galpin*, 720 F.3d at 446; *see United States v. Dupress*, 781 F. Supp. 2d 115, 154 (E.D.N.Y. 2011) ("the overbreadth analysis focuses on whether the magistrate judge authorized search warrants that provided for the seizure of specific items for which there was no probable cause"). Courts routinely uphold warrants to search entire electronic accounts when there is probable cause to believe they contain evidence of a crime, as was the case here. *See United States v. Liburd*, 17-CR-396, 2018 U.S. Dist. LEXIS 94440, at *8 (E.D.N.Y. June 5, 2018) ("[B]ecause of the nature of digital media searches, it was proper for the search warrant to allow the FBI to search the entire contents of Defendant's Facebook account, once [the judge] determined that there existed probable cause to believe that evidence relating to Defendant's criminal activity was contained in that account, even if the account also contained information unrelated to criminal activity."); *United States v. Scully*, 108 F. Supp. 3d 59, 95 (E.D.N.Y. 2015) (quoting *In re A Warrant for All Content & Other Info. Associated with the Email Account xxxxxxx@Gmail.com Maintained at Premises Controlled by Google, Inc.*, 33 F. Supp. 3d 386, 391 (S.D.N.Y. 2014)) ("[n]otably, every case of which we are aware that has entertained a suppression motion relating to the search of an email account has upheld the Government's ability to obtain the entire contents of the email account to determine which particular emails come within the search warrant."). Indeed, the scope of this warrant was supported by substantial information that defendant's Facebook account contained communications or other evidence of the suspected crime. The warrant also contained sufficient particularity in that it named the suspected statutory violation for which probable cause existed, identified the specific user account to search, as well as the categories of information sought, and it limited the search of records to a relevant period of time. *See United States v. Westley*, 17-CR-171, 2018 U.S. Dist. LEXIS 118571, at *35-49 (D. Conn. July 17, 2018) (finding that warrants to search entire Facebook accounts were neither overbroad nor lacking particularity where they described the accounts to be searched, identified categories of information, and specified the offenses for which the affidavits established probable cause); *see e.g., Galpin*, 720 F.3d at 445-46 (discussing particularity requirement).

The Supreme Court has held that a defendant is entitled to an evidentiary hearing with respect to the validity of a search warrant only if they can make a substantial preliminary showing that: (1) the warrant affidavit contained a false statement; (2) the false statement was included intentionally or recklessly; and (3) the false statement was integral to the probable cause finding. *Franks*, 438 U.S. at 155-56. In other words, to justify a *Franks* hearing "a defendant is required to show: (1) 'that there were intentional and material misrepresentations or omissions' in the warrant affidavit, and (2) that the 'alleged falsehoods or omissions were necessary to the … probable cause finding.'" *United States v. Mandell*, 752 F.3d 544, 552 (2d Cir. 2014) (quoting *United States v. Awadallah*, 349 F.3d 42, 65 (2d Cir. 2003)). Further, the Second Circuit has held that "[i]f, after setting aside the allegedly misleading statements or omissions, the affidavit, nonetheless, presents sufficient information to support a finding of probable cause, the district court need not conduct a *Franks* hearing." *United States v. Salameh*, 152 F.3d 88, 113 (2d Cir. 1998).

The Court sees no basis for a *Franks* hearing. Defendant's allegations of a material omission regarding the relationship between the defendants are unfounded. Defendant's argument is reasonably based on the redacted version of the application he has been provided through discovery. However, the complete affidavit presented to the issuing magistrate explicitly explains that there was, or is, a dating relationship between the defendants. The inclusion of this information disposes of defendant's claim that the magistrate was misled by lack of knowledge about defendant's relationship with Yeates. Defendant does not reference any deliberate or recklessly false or misleading information

in the search warrant, or any other points which could constitute a material omission or false statement under *Franks*.

For these reasons, the Court recommends that defendant's motion to controvert the search warrant and suppress the evidence derived therefrom be denied.[4]

*Motion to Suppress Statements*

Defendant moves to suppress evidence of statements he made to law enforcement on December 29, 2018. (Dkt. No. 87, ¶¶ 33-34). For the following reasons, the Court recommends that this motion be denied.

If a defendant's confession was obtained by "'techniques and methods offensive to due process' or under circumstances in which the suspect clearly had no opportunity to exercise 'a free and unconstrained will,'" the statements are inadmissible under the Fifth Amendment. *Tankleff v. Senkowski*, 135 F.3d 235, 242 (2d Cir. 1999) (quoting *Oregon v. Elstad*, 470 U.S. 298, 304 (1985)). Further, a suspect in custody must be advised prior to any questioning "that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." *Miranda v. Arizona*, 384 U.S. 436, 479 (1966). The admissibility in evidence of any statement given during custodial interrogation of a

---

[4] Defendant's motion to suppress should also be denied based on the "good faith exception" established in *United States v. Leon*, 468 U.S. 897 (1984). Under *Leon*, evidence seized pursuant to a challenged warrant is not subject to suppression so long as law enforcement acted with objective and reasonable good faith, even if the judicial officer erred in finding probable cause. *Id.* at 922. Here, there is no evidence that any officer intended to mislead the magistrate, and the Court finds that the law enforcement officers who executed the search warrant had a good faith basis to believe that the warrant was lawfully issued based upon a finding of probable cause. The warrant application certainly was "not 'so lacking in indicia of probable cause' that it was unreasonable for the officers to rely upon" them. *United States v. Moore*, 968 F.2d 216, 222 (2d Cir. 1992) (quoting *Leon*, 468 U.S. at 923). Thus, defendant's motion to suppress may also be denied on this alternative ground.

8

suspect depends on whether the police provided the suspect with *Miranda* warnings. *Dickerson v. United States*, 530 U.S. 428, 435 (2000).

Here, defendant has not demonstrated a basis to suppress these statements. On a motion to suppress, the moving party must make a preliminary showing as to the circumstances of the arrest, or other government action, sufficient to raise a question as to its legality. *See United States v. Pena*, 961 F.2d 333, 339 (2d Cir. 1992). An evidentiary hearing ordinarily is required if "the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact" are in question. *Id.* In order to create a factual dispute, a defendant "must submit sworn factual allegations from an affiant with personal knowledge." *United States v. Urena-Pere*, 91-CR-946, 1992 U.S. Dist. LEXIS 611, at *2-3 (S.D.N.Y. Jan. 23, 1992) (holding that where a defendant has not submitted an affidavit from anyone with personal knowledge of the events, an evidentiary hearing unnecessary, and, for lack of any factual basis, his motion to suppress must be denied); *see also United States v. Lewis*, 17-CR-28, 2018 U.S. Dist. LEXIS 111471, at *2 (W.D.N.Y. Feb. 1, 2018) ("a motion seeking a suppression hearing must be accompanied by an affidavit from someone having personal knowledge of the facts justifying the hearing."). Defendant has not made even a preliminary showing of facts to support an argument that his statements were made involuntarily. He has not submitted an affidavit from anyone with personal knowledge to demonstrate the existence of a dispute over a material fact. In the absence of specific factual allegations, defendant's motion is wholly unsupported, and he is not entitled to an evidentiary hearing.

Further, defendant has failed to offer any legal basis for suppression of these statements. He does not argue that his confession was obtained involuntarily or by

coercion. He does not allege that he was entitled to, or denied, *Miranda* warnings. In fact, defendant's motion acknowledges that he was not in custody for purposes of *Miranda* at the time he made such statements. *See* Dkt. No. 87, ¶ 34 ("The moving defendant, however, as the detective notes at the onset of the video and audio recorded interview, was not in custody at the time."). It is well-settled that advice-of-rights under *Miranda* is not required unless the defendant is subjected to "custodial interrogation." *See Illinois v. Perkins*, 496 U.S. 292, 296 (1990) ("It is the premise of *Miranda* that the danger of coercion results from the interaction of custody and official interrogation.").

For these reasons, the Court recommends that defendant's motion to suppress statements be denied.

## OMNIBUS DISCOVERY DEMANDS

### *Out-of-Court Identification Evidence*

Defendant moves to preclude the Government from introducing evidence of any out-of-court identifications of defendant on the basis that defendant has not received discovery in connection with out-of-court identification procedures or images of the defendant. (Dkt. No. 87, ¶ 34). The Government responds by confirming that it has already provided to defendant surveillance footage from Snyder Industries that captured the defendant on camera. (Dkt. No. 97, pg. 17). Accordingly, defendant's motion is denied as moot.

### *Bill of Particulars*

Defendant moves for a bill of particulars. (Dkt. No. 87, ¶ 36). He seeks particularization as to "[w]hether he is being charged as a principal, an accomplice, or as both a principal and as an accomplice in connection with the Indictment." (*Id.*).

10

Federal Rule of Criminal Procedure 7(f) "permits a defendant to seek a bill of particulars in order to identify with sufficient particularity the nature of the charge pending against him, thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987). However, "[t]he Government may not be compelled to provide a bill of particulars disclosing the manner in which it will attempt to prove the charges, the precise manner in which the defendants committed the crimes charged, or a preview of the Government's evidence or legal theories." *United States v. Rittweger*, 259 F. Supp. 2d 275, 291 (S.D.N.Y. 2003). In determining whether a bill of particulars is warranted, a court is to consider "the complexity of the offense, the clarity of the indictment, and the degree of discovery otherwise afforded to defendants." *United States v. Shoher*, 555 F. Supp. 346, 349 (S.D.N.Y. 1983). Further, it is well-settled that acquisition of evidentiary detail is not the purpose of a bill of particulars. *United States v. Torres*, 901 F.2d 205, 234 (2d Cir. 1990).

Here, the Court finds that a bill of particulars is unnecessary because the specific allegations contained in the Indictment, together with the discovery already provided, are sufficiently clear. The obstruction of justice charges are neither complex nor difficult to understand. They allege that between January 15, 2019 and February 4, 2019, defendants did, or attempted to, corruptly alter, destroy, mutilate, and conceal text message conversations and Facebook Messenger conversations with the intent to impair those objects' integrity and availability for use in an official proceeding, namely a federal grand jury investigation concerning controlled substances violations and the overdose death of M.A. Further, the Government submits that it has already provided considerable

11

information to the defendant in addition to the charges of the Indictment; including relevant affidavits, cell phone data, Facebook data, and video footage which provides the basis for this charge. (Dkt. No. 97, pgs. 18-22). The Government objects that defendant has not offered any specific facts or reasons to justify a finding that further particularization is necessary. (*Id.*).

Defendant is not permitted to use a bill of particulars to learn evidentiary detail or the Government's legal theory. The Indictment plainly allows defendant to identify the charges against his, avoid surprise at trial, and interpose a plea of double jeopardy if necessary. For these reasons, defendant's request for a bill of particulars is denied.

*Disclosure of Brady Material*

Defendant moves for the disclosure of any favorable, exculpatory or impeachment materials pursuant to *Brady*, *Giglio* and their progeny.[5] (Dkt. No. 87, ¶ 37). "[A]s a general rule, *Brady* and its progeny do not require immediate disclosure of all exculpatory and impeachment material upon request by a defendant." *United States v. Coppa*, 267 F.3d 132, 146 (2d Cir. 2001). "[A]s long as a defendant possesses *Brady* evidence in time for its effective use, the Government has not deprived the defendant of due process of law simply because it did not produce the evidence sooner." *Id.* at 144.

The Government submits that it is mindful of its obligations under *Brady* and its progeny. (Dkt. No. 97, pgs. 22-24). The Government that it will disclose any exculpatory information, if and when it becomes aware of it. The Government agrees to provide impeachment material, namely, promises of leniency or immunity agreements with witnesses, criminal records of witnesses, immoral or criminal acts committed by

---

[5] *Brady v. Maryland*, 373 U.S. 83 (1963); *Giglio v. United States*, 405 U.S. 150 (1972).

12

witnesses, and prior inconsistent statements, prior to the commencement of trial and when the Government produces *Jencks Act* material. Given the Government's representations, defendant's motion to compel the production of *Brady/Giglio* material is denied. Consistent with *Coppa*, the Government is reminded of its continuing obligation to timely disclose any *Brady* and *Giglio* material to defendant. *See United States v. Padovani*, No. 14-CR-00224, 2016 WL 5402696, at *4 (W.D.N.Y. Sept. 28, 2016).

*Disclosure Pursuant to Rules 404(b), 608, and 609*

Defendant moves for pretrial disclosure of prior crimes, wrongs, or other evidence which the Government may seek to introduce or use to impeach under Rules 404(b), 608, or 609 of the Federal Rules of Evidence. (Dkt. No. 87, ¶¶ 38-42).

The Government states that it will provide reasonable notice in advance of trial of the general nature of prior uncharged crimes that it intends to use at trial under Rule 404(b). (Dkt. No. 97, pgs. 24-26). The Government submits that it has already provided defendant with evidence concerning his prior convictions, as well as evidence of other conduct which may have occurred on the same day as the instant offense. The Government further submits that it has no obligation to provide pre-trial notice of impeachment evidence under Rules 608 and 609 and will address same in its pre-trial memorandum to the District Court. The Government indicates it will provide this information when directed by the trial judge.

The Government is required to provide "reasonable notice in advance of trial" of the general nature of prior uncharged crimes or bad acts it intends to introduce against a defendant. *See* Fed. R. Evid. 404(b). Rule 608 of the Federal Rules of Evidence does not contain the same pretrial notice requirement. Based upon the Government's

13

representation that it will disclose bad act or impeachment evidence prior to trial, defendant's motion for disclosure is denied as moot. The Court instructs that any disclosure should be done in accordance with the District Court's pretrial order. The issue of admissibility of evidence pursuant to Federal Rules of Evidence 404(b), 608 and 609 is left to the determination of the District Court at the time of trial.

*Early Disclosure of Witnesses and Jencks Act Materials*

Defendant moves for the disclosure of witness names and statements prior to trial. (Dkt. No. 87, ¶ 43). The Government has no general duty to disclose the identities of its witnesses before trial. *United States v. Bejasa*, 904 F.2d 137, 139 (2d Cir. 1990). Section 3500 of Title 18 of the United States Code requires that the Government, on motion of defendant, disclose a Government witness's prior statements that are in the Government's possession and relate to the subject matter of the witness's direct testimony. *See also Jencks v. United States*, 353 U.S. 657 (1957); Fed. R. Crim. P. 26.2 (procedure for producing a witness statement). A witness statement is defined as: (1) a written statement by a witness that is signed or otherwise adopted or approved by the witness; (2) a substantially verbatim recording or transcription of a witness's oral statement; or (3) any statement however taken or recorded made by the witness to the grand jury. 18 U.S.C. § 3500(e). Statements are not required to be produced, by law, until after the witness has testified on direct examination, and the Court cannot mandate that they be produced sooner. *See* 18 U.S.C. § 3500(a); Fed. R. Crim. P 26.2(a).

Here, the Government indicates that, in advance of trial and in accordance with the District Judge's pretrial order, it will produce all material required by the *Jencks Act*. (Dkt. No. 97, pgs. 26-27). The Government further indicates that it will disclose its witness

14

list when ordered to do so by the District Court. In light of these representations, defendant's request for witness names and early disclosure of *Jencks* Act material is denied.

### *Preservation of Rough Notes*

Defendant moves for an order the preservation of all rough notes taken in the course of the investigation by law enforcement, agents, and third parties. (Dkt. No. 87, ¶ 44). Defendant further requests that the Government preserve notes made by any Government witnesses in the event they later become discoverable. (*Id.*). The Government submits that defendant has been provided with notes obtained during this investigation. (Dkt. No. 97, pg. 27). To the extent the request is not already moot, the Court grants defendant's motion and the Government is directed to preserve all rough notes and items of evidence. *See United States v. Jones*, 2014 U.S. Dist. LEXIS 84452, at *16 (W.D.N.Y. May 29, 2014), *report and recommendation adopted*, 2014 U.S. Dist. LEXIS 84023 (W.D.N.Y. June 19, 2014), (quoting *United States v. Coates*, U.S. Dist. LEXIS 105689, 2013 WL 3897484, at *5 (W.D.N.Y. July 29, 2013)).

### *Joinder in Motions*

Defendant moves to join in pre-trial motions of co-defendant Yeates. (Dkt. No. 87, ¶ 45). Co-defendant Yeates has not filed any pretrial motions and the time to do so has expired. (*See* Dkt. No. 96). Accordingly, defendant's request is denied as moot.

### *Government's Request for Reciprocal Discovery*

The Government moves for reciprocal discovery pursuant to Rule 16(b) of the Federal Rules of Criminal Procedure including the opportunity to inspect, copy or photograph books, papers, documents, photographs, tangible objects or copies or portions thereof which are in the possession, custody or control of the defendant and which the defendant intends to introduce as evidence at trial, as well as the results or reports of any physical or mental examinations or scientific tests or experiments made in connection with the case. (Dkt. No. 97, pgs. 27-28). The Government's motion for reciprocal discovery is granted, and defendant is reminded that his disclosure obligations continue up through and during trial. *See* Fed. R. Crim. P. 16(c).

## CONCLUSION

For the foregoing reasons, it is recommended that defendant's motions to suppress physical evidence and custodial statements be denied. (Dkt. No. 87). It is ordered that defendant's omnibus discovery demands and the Government's reciprocal discovery demands are decided in the manner detailed above.

Pursuant to 28 U.S.C. §636(b)(1), it is hereby ordered that this Report, Recommendation and Order be filed with the Clerk of Court.

Unless otherwise ordered by Judge Sinatra, any objections to the recommendations portion of this Report, Recommendation and Order must be filed with the Clerk of Court within fourteen days of service of this Report, Recommendation and Order in accordance with the above statute, Rules 59(b), 45(a), and 45(c) of the Federal Rules of Criminal Procedure, and Local Rule of Criminal Procedure 59. Any requests for an extension of this deadline must be made to Judge Sinatra.

*Failure to file objections, or to request an extension of time to file objections, within fourteen days of service of this Report, Recommendation and Order WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.* See Small v. Sec'y of Health & Human Servs., 892 F.2d 15 (2d Cir. 1989).

The District Court will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the Magistrate Judge in the first instance. See Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 990-91 (1st Cir. 1988).

*Pursuant to Local Rule of Criminal Procedure 59(c)(2), written objections "shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority."* ***Failure to comply with these provisions may result in the District Court's refusal to consider the objection.***

**SO ORDERED.**

Dated: July 13, 2022
Buffalo, New York

_____
MICHAEL J. ROEMER
United States Magistrate Judge